IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN JOSEPH THOMAS ROUSE, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-21-2820 |
| SCOTT D. SHELLENBERGER, LAUREN ANN STONE, RUTH JAKABOWSKI, NANCY M. PURPURA, MELISSA HYATT, and JULIE ENSOR, | * * * | |
| Defendants | | |

\*\*\*

## MEMORANDUM OPINION

John Joseph Thomas Rouse, a Maryland resident, has filed the instant complaint, construed as being filed pursuant to 42 U.S.C. §1983, seeking money damages for injuries sustained as a result of his arrest and subsequent detention awaiting trial. Rouse has neither paid the filing fee nor filed a Motion for Leave to Proceed in Forma Pauperis. Because the case cannot proceed, he shall not be required to cure the deficiency.[1]

This case arises from and is related to stat court cases involving Mr. Rouse. ECF No. 1 at 5. Mr. Rouse states that in July of 2018, unidentified individuals embezzled property from an estate and that a false and fraudulent peace order was filed against him.[2] *Id.* Mr. Rouse attempted to investigate and stop the embezzlement but ultimately, in February 2021, he was improperly

---

[1] Mr. Rouse provided to the court a copy of a Motion he filed in state court (ECF No. 2) which was inadvertently docketed as a Motion in this case. That Motion is denied.

[2] It also appears that in 2018 Mr. Rouse was evicted from his residence by the estate. ECF No. 1-1 at 6.

arrested, presumably based on his conduct while investigating the matters regarding the estate. *Id.* He states that he has remained in custody since February 8, 2021.[3] *Id.*

Mr. Rouse names as Defendants Baltimore County State's Attorney Scott D. Shellenberger, Assistant Baltimore County State's Attorney Lauren Ann Stone, Chief Administrative Judge Ruth Jukabowski, Trial Judge Nancy M. Purpura, Chief of Baltimore County Police Melissa Hyatt, and Baltimore County Circuit Court Clerk Julie Ensor. ECF No. 1, pp. 2-3. As to Defendants Shellenberger, Jukabowski and Hyatt, he notes that they are sued pursuant to "Respondeat Superior." *Id.*

## Standard of Review

A complaint that is legally frivolous may also be dismissed at its inception for lack of subject matter jurisdiction pursuant to Fed R. Civ. P. 12(b)(1). *See Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999); *O'Connor v. United States*, 159 F.R.D. 22 (D. Md. 1994); *see also Crowley Cutlery Co. v. United States*, 849 F.2d 273, 277 (7th Cir. 1988) (federal district judge has authority to dismiss a frivolous suit on his own initiative).

This court is mindful, however, of its obligation to liberally construe pleadings filed by self-represented plaintiffs, such as the instant amended complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and in so doing assumes the factual allegations are true. *Id.* at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"). In making this determination, "[t]he district court need not

---

[3] Despite this assertion, Mr. Rouse has provided a private residential address to the court. His current custodial status is unclear.

2

look beyond the complaint's allegations" but "must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White,* 886 F.2d 721, 722–723 (4th Cir. 1989).

With these standards in mind, the court finds that Mr. Rouse has failed to articulate allegations which may be suitably addressed by this court or to which the named Defendants should be required to respond.

## Analysis

### A. Personal Participation

Liability for constitutional violations attaches only upon personal participation by a defendant in the wrongful conduct. It is well established that the doctrine of respondeat superior does not apply in civil rights claims. *See Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)). As noted, Mr. Rouse has not pointed to any action or inaction on the part of Defendants Melisa Hyatt, Ruth Jukabowski, or Baltimore County State's Attorney Scott D. Shellenberger, but instead indicates that they are sued based on a theory of respondeat superior. ECF No. 1 at 2. As Mr. Rouse seeks to hold them responsible for the conduct of their employees, his claim against Defendants Hyatt, Jukabowski and Shellenberger is unavailing and is dismissed.

3

## B. Judicial Immunity

Many of the parties whom Mr. Rouse seeks to hold responsible are protected from liability. *See Burns v. Reed*, 500 U.S. 478 (1991). This protection, known as the doctrine of judicial immunity, is designed to protect the judicial process. Accordingly, the inquiry conducted by this court centers on whether the Defendants' actions are closely associated with the judicial proceedings about which Mr. Rouse complains. *Id.* Mr. Rouse's entire complaint is suffused with his grievances regarding the handling of his state criminal proceedings and civil proceedings arising from the administration of an estate that resulted in his eviction from real property.

The doctrine of judicial immunity extends, of course, to judges, *see Forrester v. White*, 484 U.S. 219, 226-27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits"), and shields them from monetary claims against them in both their official and individual capacities. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). Judicial immunity is an absolute immunity; it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely. *Id.* at 11. An act is still judicial, and immunity applies, even if the judge commits "'grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)).

Moreover, "judges . . . are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction" and "are alleged to have been done maliciously or corruptly." *Stump*, 435 U.S. at 355-56; *see Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly).

In *Pierson v. Ray*, 386 U.S. 547 (1967), the United States Supreme Court granted certiorari to consider whether a judge was liable for damages under 42 U.S.C. § 1983 for an unconstitutional conviction. In explaining its rationale for judicial immunity, the Court stated:

4

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ... This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences" .... It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Id.* at 553-54.

The bar of absolute judicial immunity may be overcome in two limited sets of circumstances: (1) "for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citing *Forrester at* 227-29). A judge acts in a judicial capacity when the function is one "normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. The "relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Mireles*, 502 U.S. at 12-13 (citing *Stump*, 435 U.S. at 362).

Courts thus look to an "act's relation to a general function normally performed by a judge" to determine whether the act was judicial. *Id.* at 13. Neither exception applies here. Mr. Rouse's claims against members of the Maryland State Judiciary stem from the fact that the named individual judges appear to have presided over aspects of his criminal proceedings and civil litigation. Rulings on pending cases over which they had jurisdiction are precisely the type of judicial action covered by judicial immunity. Mr. Rouse provides no grounds to defeat the judicial immunity that applies to the Defendants' determinations made in his cases. Accordingly, Mr. Rouse's allegations against Defendants Nancy M. Purpura and Ruth Jukabowski are dismissed.

### C.     Quasi-Judicial Immunity

Additionally, absolute quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994). This doctrine of absolute quasi-judicial immunity has been further adopted and extended to court support personnel because of "'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts.'" *Kincaid v. Vail,* 969 F.2d 594, 601 (7th Cir.1992) (quoting *Scruggs v. Moellering,* 870 F.2d 376, 377 (7th Cir.1989)).

In determining the applicability of quasi-judicial immunity, courts consider three main criteria: "(1) whether the official's functions are similar to those of a judge; (2) whether a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) whether adequate procedural safeguards exist to protect against constitutional deprivations." *Howard v. Food Lion Inc.,* 232 F. Supp. 2d 585, 594 (M.D.N.C. 2002) (citing *Ostrzenski v. Seigel,* 177 F.3d 245, 249 (4th Cir. 1999)). Pursuant to *Pressly v. Gregory,* 831 F.2d 514, 517 (4th Cir. 1987), "immunity is vitiated only when the judicial officer acts in the clear absence of jurisdiction." *Id.* (citing *Stump,* 435 U.S. at 349). Mr. Rouse does not claim that employees of the named courts acted in the absence of jurisdiction. Thus, Mr. Rouse's claim against Defendant Julie Ensor is not cognizable.

Likewise, prosecuting attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones. *See Imbler v. Pachtman,* 424 U.S. 409, 422-23 (1976); *see also Kalina v. Fletcher,* 522 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993); *Nero v. Mosby,* 890 F.3d 106, 117 (4th Cir. 2018); *Springmen v. Williams,* 122 F.3d 211 (4th Cir. 1997). As with court employees, the

inquiry focuses on whether a prosecutor's actions are closely associated with judicial process. *See Burns*, 500 U.S. at 479 (citing *Imbler*, 424 U.S. at 422-23). The court must use a "functional approach" to "determine whether a particular act is 'intimately associated with the judicial phase.'" *Nero*, 890 F.3d at 117-18 (quoting *Imbler*, 424 U.S. at 430). The Fourth Circuit stated in *Nero*, 890 F.3d at 118:

> A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, *Buckley*, 509 U.S. at 273, decides to seek an arrest warrant, *Kalina*, 522 U.S. at 130, prepares and files charging documents, *id.*, participates in a probable cause hearing, *Burns*, 500 U.S. at 493, and presents evidence at trial, *Imbler*, 424 U.S. at 431.

The decisions as to whether, when, and how to prosecute pertain to the role of advocate. Therefore, on the face of the suit, any prosecutorial defendants such as "District of Maryland; Department of Injustice", enjoy absolute immunity. *See Lyles v. Sparks*, 79 F.3d 372, 376-77 (4th Cir. 1996). Thus Mr. Rouse's claim against Assistant State's Attorney Lauren Ann Stone is dismissed.

A separate Order follows.

Dated this 30 day of Nov., 2021.

FOR THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge